*BY THE COURT.
I. The first question is, whether Francis Farley was a trustee for his brother’s children, the plaintiffs, as to one moiety of the Northcarolina, and as to one third part of the Virginia, lands? for, if he were a trustee, the defendents, volunteer clamants under him, are in the same predicament undoubtedly.
In the case between Fisher and Wigg, Peere Williams, b. 1. p. 21. reports Chief Justice Holt to have said, jointenancy is favored in law; (b) because as the law does not love fractions of ^estates; so neither does it encourage divisions of tenures, or multiplication of services, now as long as the jointenancy continues, there is a joint tenure, but when the tenacy becomes in common, then the tenures and services are served. * * * this is the true and only reason why joint estates are fa-voured in law; at least, i can invent no other.
The court of equity, instead of favouring the right of survivorship, hath, on the contrary, opposed it, wherever it could be opposed, without usurping ■ unwarrantable powers.
The only case, in which the right of sur-vivorship doth not seem rigid, groundless, and unjust, is that wherein the tenants deliberately agree to take their chances for it.
Where the tenents become interested gratuitously, e. g. by devise, to deprive the family of the tenent who died first, seems unjust, and more so, if he had improved the land, by bestowing labour and expense upon it. in such a case however their supplication to the court of equity for relief would be vain, perhaps, because that court can no more decree directly against the right of survivorship, the existence of which is recognized by law, than, it can alter the law, in any other instance.
If two men, whose object is not of a mercantile nature, for there is no right by sur-vivorship, advance equal portions of the money lor lands purchased by them, and conveyed by words, which in construction of law, would transfer a joint interest, whether the court of equity, simply for the reason that the purchase money was equaly advanced, ought to declare the survivor a trustee for the representatives of his deceased companion? 'is a question upon which an opinion will not now be delivered, because it is unecessary. for
In addition to payment by Simon Farley of his proportions of the purchase money, in the principal case, several circumstances, thought abundantly sufficient to constitute Francis Farley a trustee for his brother, as to the lands now clamed, occur.
1. The brothers did not intend that either of them should acquire by survivorship a right to the whole estates purchased.— Simon probably did not know that such a right could exist, and certainly did not expect it would be clamed in the event which happened. This is manifest by his testament, which, devising those estates, and appointing Francis an executor, supposed the validity of the one, notwithstanding survivance of the other, if Simon did not know that the right by survivorship could exist, or did not expect it would be clamed in the event which happened, hence is concludeth that he never intended to purchase these estates in such a manner that a right to the whole of them should accrue to the survivor, that Francis did not ^'intend originaly to purchase the estates in that manner is proven, 1, by his abjuration of the right by survivor-ship, which he thought iniquitous, but which could not be iniquitous if it had been in contemplation of the parties at the times of the purchases; and 2, by his pur *257 chase after his brothers death, from Francis Miller of one third part, instead of one half, of the lands in Norfolk, and a court of equity may set aside or reform a conveyance not agreeing with the intention of parties; for the conveyance written, nor for its own sake but, for exhibiting and fullfiHing that intention, ought to be a true image of its archetype, if it be not so, the court of equity, decreeing a party, holding a legal property by the terms of such a conveyance, to restore so much of it as he ought not to retain, to him, who would have been the legal owner, if the conveyance had faithfully exhibited the intention, is exercising one of the functions universaly conceded to be proper to that tribunal.
2. Accomplishment of an act by Francis Farley, after the legal title by survivor-ship accrued, for preventing assertion of that title by his representatives, was hindered by failure of counsil to observe instructions sent to him for that purpose.— and when the progress of an act, which is admitted by all to be just, and which the party, confessing himself in honour bound to perform, had begun to perform, hath been interrupted, without any default of him whose benefit was the object, a decree, putting matters in the same state wherein they would have been, if the act had been accomplished, is dictated by the spirit of equity, and believed to be not inconsistent with the practice of this court.
The common rule in a court of equity is, where an agreement made upon good consideration is not performed, the party interested shall have the benefit to which performance would have intitled him. Strange’s rep. 4S6. The spirit which suggested this rule cannot disapprove the fol-' lowing rule: where the completion of an act, which one in obedience to the precepts of conscience had earnestly begun to perform, was prevented against his will, the party interested shall have like benefit as if the act had been completely performed, the instructions to counsil by Francis Farley; which was the begining of an act intended to secure to his brothers family an estate to which he knew them to be justly intitled, was undoubtedly equivalent to an agreement to that purpose; and his motive to it, namely, that he might be eased of that compunction, which one conscious of withholding dishonestly the property of another feels, is affirmed with equal confidence to be a good consideration.
* Where a legal title, for recovering which a legal remedy had been prosecuted, is rendered an abortion by some event posterior to institution of the demand, the court of equity may supply that remedy which the law had not provided, e. g. a writ de partitione facieuda between two jointenents will abate by death of either party before the first judgement awarded, although not afterwards, see Bacon’s abr. tit. coparceners (D) where is quoted Balison 59. in such a case, on application by the heir or devisee of the defendent, if by his death the writ abated, -the court of equity, as is believed, would be justified in decreeing a partition, because it would be the consummation of an act begun by the plaintiff himself, if the ptaintiii were the party by whose death the writ abated that on behalf of his heir or devisee the court would make a like decree is as little doubted, not only because the remedies of the parties ought to be reciprocal, and consequently if the plaintiffs surviving would have been compeled to make partition, the defendent in the contrary event ought to be likewise compellable, but because an assignable right ought not to be destroyed by an event, which the owner could not prevent, that is, his own death in the life time of another man, an event against the consequence from which he was actually en-deavouring to guard, and in relieving against which the court of equity would exercise one of the powers acknowledged, as is conceived to belong to it
Where a man, intending to settle an estate, over which he hath a power, so that it may be subject to testamentary disposition, or, in default of that, to hereditary succession, neglects a form which the law requires to perfect the settlement, but of which the absence or presence could not influence the intention, the party interested shall have the benefit to which observance of the form would intitle him. e. g. a writing signed and sealed by one jointenent, declaring the intention thereof to be to sever the jointure, and purporting to be a conveyance of his moiety of the land in trust for those to whom he should devise it, or for his heirs, if he should not devise it, omits the name of the trustee, or appoints a trustee who had died before, in such a case a court of equity, dispensing with the trustees intervention, who, if he had existed, could not have done more in the business than his portrait or his statue, would decree the partition, consummating the parties intention; because that court, if power and will, alone essential naturaly to translation of property, concur, will aid the act designed for a memorial of the translation, supplying defects in the form, in which office the court fullfills the purpose of instituting forms, which was that they might be subservient to the intentions of the parties, not that the want of forms should defeat 1 hose, their intentions.
"3. Francis Farley was the agent for his brother in purchasing the lands, and, when two or more men employed another to purchase lands for them, the presumption being that a wager upon longevity was not in contemplation of the purchasers, the court of equity may with propriety decree the survivor, in case a joint estate be conveyed, to be a trustee of so much as excedes his just proportion, unless instructions to the agent shew the intention of his constituents to have been to take their chances for survivorship; because such a conveyance being- an unauthorized act binds not in equity the rights of the constituents, now in this case not only *258 instructions to take a conveyance of a joint estate are not produced, but, that the parties did not design or desire such a conveyance to be taken seems manifest.
4. Francis Farley, in 1765, and the year following, debited Simon with proportions of money paid on account of the lands, and particularly for quit rents of those in North-carolina, with which the representatives of Simon could not have been justly chargeable. if his surviving brother remained sole proprietor of the lands. This therefore is an implicit acknowledgement of the right of those representatives. Francis doth not indeed appear to have rendered an account of profits, for which one of his letters contains the reason, that is, the lands had not yielded profits.
5. Francis Farley explicitly, repeatedly, and uniformly acknowledged the right of his brothers representatives to the lands now clamed by them, and that acknowl-edgement includeth an admission of every thing essential to the perfection of that right, and consequently an admission of a trust in him who held the legal title.
6. The instructions written by direction of Francis Farley, and sent by him to his counsil, were professedly designed to preserve to his brother’s representatives the right which they are endeavoring to assert. these instructions, slighted and disobeyed, contrary to the anxious desire of their author, ought in equity to be deemed a declaration of trust by him for the benefit of those representatives.
II. The next question is whether the plaintiffs, who, being natural born subjects of Great-britain at the time of the american separation, did not afterwards become citizens of the united states, are aliens to those states, and consequently disabled to prosecute any action to recover, because disabled to hold, lands of inheritance, in the said states?
The statute of may session, 1779, c. 14 sect. I in the preamble recites, that by the separation of the united american ^states, which had been part of the british empire, the inhabitants of the other parts of that empire became aliens and enemies to the said states, and as such incapable of holding property real or personal acquired therein, and so much of the property as was within this commonwealth became by the laws vested in the commonwealth.
The laws, to which the legislature refers, must be the common law, as is supposed, because no other law then existing is recollected by which aliens are incapable of holding property of any kind, in the country to the sovereign whereof they are not subjects. By the common law, if we allow it to be contained in those archives which alone have hitherto been consulted in order to discover it, a natural born subject of Great-britain cannot by any mean become an alien to those who, at the time of his birth, were his fellow subjects, this appears by 7. Co. Calvins case passim, on which case, one observation by the reporter is, that such a concurrence of judgements resolutions and rules there be in our books in all ages concerning this case, as if they had been prepared for the deciding of the question of this point; and that (which never fell out in any doubtful case) no one opinion in all our books is against this judgement, which observation, unless it can be contradicted, ought to make proselytes to the doctrine asserted in that case those who where before fautors of the contrary doctrine stated in that statute of 1779. c. 14. Francis Bacon, in his argument of the same case, goes so far as to say, if a man look narrowly into the law in this point, he shall find a consequence that may seem at the first strange, but yet cannot be .well avoided; which is, that if divers families of englishmen and woman plant themselves at Middleborough, or at Roan, or at Lisbon, and have issue, and their descendents do intermarry among themselves, without any intermixture of foreign blood, such descendents a:re naturalized to all generations; for every generation is still of liege parents, and therefore naturalized; so as you may have whole tribes and lineages of english in foreign countries, and to the words quoted by Coke in Calvins case fo. 27 b. from Bracton, the last mentioned author subjoins, ‘et ita tamen fi contingat guerram moveri inter reges, remaneat personalitur quilibet eorum cum eo cui fecerit ligeantiam, et faciat fervicium debitum ei cum quo non steterit impersona, fol. 427. b. '
The inconveniences from permitting the permanent property in any country to be holden by those who, although they be not in a legal sense aliens, may be, and actually were in this .case enemies, in the popular sense, must not be remedied by judges who have not power to judge according to that which '‘they think to be fit, but that which out of the laws they know to be right, and consonant to law, 7 Co. fol. 27. a. judges must judge according as the law is, riot as it ought to be. Vaugh 285.
When, out of empires violently dismembered (which was the case between America and Great-Britain) separate, and independent nations are formed, such of the evils, which must happen, both during the conflict, and' after it, as can be cured, may be cured by treaties between the nations, when tranquility is restored, more humanely than by fulminating the panoply of escheats, forfeitures, confiscations involving in distress and ruin many people on both sides innocent, otherwise than by fiction, of those injuries which caused the separation, (c)
If the common law be as it hath been stated, the recital in the statute of 1779, which was consequently untrue, did not change the law; for a recital, even in a legislative act, hath not .a plastic energy— a declaration that a thing is, which is *259 not, will not make the thing to be. if this statute had recited that by a former statute, which did not exist, the people of other parts of the british empire, born before the separation, were aliens to the united american states, and disabled to hold property within them, such a recital would not have been a legislative act, nor had the force of a law. and if such a recital could have altered the common law in this commonwealth, it would have been ineffectual as to the lands clamed by the plaintiffs in Northcarolina.
Of the remaining questions, which affect the lands in Northcarolina only, the third is
III. Whether the plaintiffs, who did not commence this suit within the time prescribed by the statute for limitation of actions in that state are barred?
To which the answer is, the statute is not pleadable by the defendents, who are trustees, because in equity their possession is the possession of the plaintiffs.
By the common law possession is homologous with the right of the possessor, of two men abiding in the same house, if one only have right to the possession the law shall adjudge him only in possession. Ivyttleton’s tenures, sect. 701, et vice versa ■of two parceners, jointenents, or tenents in common of the same house, if one only abide in the house, the law will adjudge both in possession. See 1 Salk. 285. so that a possession, actualy 'social, is legaly private, if the right be private ; and a possession, actualy private, is legaly social, if the right be social.
By parity of reason, the possession of the defendents, who were trustees for the plaintiffs, as to their proportion, and in equity tenents in common with them, that is, holding one moiety to their own use, and holding the other moiety to the use of the plaintiffs, was in equity the possession of those plaintiffs pro tanto.
IV. The fourth question is, whether a court of equity in this commonwealth can decree the defendents, who are within its jurisdiction, to convey to the plaintiffs lands which are without its jurisdiction?
The power of that court being exercisea-ble (d) generaly over persons they must be subject to the jurisdiction of the court; and moreover the acts, which they may be decreed to perform, must be such as, if performed within the limits of that jurisdiction, will be effectual.
That the defendents are subject to the jurisdiction of the court, and amesnable, to its process hath not been denied; and that a charter of feoffment containing a power of attorney to deliver seisin, a deed of bargain and sale, deeds of lease and release, or a covenant to stand seised, executed in Virginia, would convey the inheritance of lands in Northcarolina as effectualy as the like acts executed in that state would convey such an inheritance, hath not been denied, and is presumed, until some law there to the contrary be shewn, because the place where a writing is signed sealed and delivered, in the nature of the thing, is unimportant.
If an act performed by a party in Virginia, who ought to perform it, will be effectual to convey land in Northcarolina, why may not a court of equity in Virginia decree that party, regularly brought before that tribunal, to perform the act?
Some of the defendents counsil supposed that such a decree would be deemed by our brethren of Northcarolina an invasion of their sovereignty, to this shall be allowed the force of a good objection, if those who urged it will prove that the sovereignty of that state would be violated by the Virginia court of equity decreeing a party, within its jurisdiction, to perform an act there, which act voluntarily performed, any where, would not be such a violation.
The defendents counsil objected also, that the court cannot, *in execution of its decree, award a writ of sequestration against the lands in North-carolina, because its precepts are not au-thorative there, but this, which is admitted to be true, doth not prove that the court cannot make the decree, because, although it can not award such a writ of sequestration, it hath power confessedly to award an attachment for contempt in refusing to perform the decree, this remedy may fail indeed by removal of the defendents out of the courts jurisdiction, yet such a removal, after the party had been cited, is not an exception which can be interposed to prevent a decree, a court of common law may enter up a judgement against him, who, by removal of his goods and chatels with himself, after having pleaded to the declaration, or after having been arrested, rendereth vain a capias ad satisfaciendum or a fieri facias, (e)
From a doctrine contrary to that now stated and believed to be correct may result both inconvenience and a failure of justice.
1. A man agrees to sell to another, or holds in trust for another, lands in Georgia, Kentuckey, or one of the new states northwest of the Ohio, but he cannot be decreed to execute the agreement, or to fullfill the trust by any tribunal but that in one of those countries, several hundred miles distant from the country e. g. North- *260 Carolina, in which both parties, and the witnesses to prove matters of fact controverted between them, reside, like and greater inconveniences may happen in numberless other cases, whereas a case can rarely if ever occur, the discussion of which can be so convenient to the defendent in any other as in his own country.
2. An agent employed to purchase land for people intending to migrate to amer-ica, or for others, having laid out the money deposited for that purpose with him by them, and having taken conveyances to himself or to a friend for his use, refuseth not only to make titles to his constituents, but also to discover the lands purchased, they meet with him in one of the states, and in the court of equity there file a bill against him, praying a ^discovery and a decree for conveyances, he excepts to the jurisdiction of the court as to any lands not lying within that state, and denieth by answer that any lands within that state were purchased by him for the plaintiffs, which was true, the bill in such a case, according to the doctrine of the de-fendents counsil in the principal case, must be dismissed, and this must be the fate of every other bill, until he shall have the good fortune to find out in what state the lands purchased are: and if they be in several states, a bill must be filed in every one. if to this be said, that the court may compel the discovery, although it may pro-cede no further, the answer is, that this is directly the reverse of the rule in the court of equity, namely, that the court when it can compel the discovery, will compleat the remedy, without amanding the party elsewhere for that purpose, and decree to be done what ought to be done in consequence of the discovery.
Therefore the court is of opinion, that Francis Farley the grand father of the female defendents, after the death of his brother Simon Farley, was a trustee for the plaintiffs, the children, devisees, and legatees of the decedent, as to one moiety of the lands in Northcarolina, brought by the brothers from William Byrd, and as to one third part of the lands in the county of Norfolk, in this commonwealth of Virginia, bought by them and Francis Miller from Robert Ives and Keziah his wife, from Anne Ludgal widow, John Biggs and Bathia his wife, William Dale and Mary his wife, and Sarah Ludgal Spinster, from .John Ivy and Elizabeth his wife, and from James Tucker, and that some of the exhibits are proofs of such trust, equivalent to a •formal declaration thereof; and that the defendents, whose title was not acquired by purchase for valuable consideration, can not bar the demand of the plaintiffs, by length of time; and that the plaintiffs, whose right accrued before the separation of the united states of America from Great-britain, are not disabled to prosecute this suit: and that this court hath jurisdiction thereof, the defendents being amesnable to its process, and therefore the court, declaring the said Francis Farley to have stood
seised, and the defendents now to stand: seized of one undivided moiety of the lands, in Northcarolina, and of one undivided' third part of the lands in the county of Norfolk, which proportions are clamed by the bill, in trust to the use of the plaintiffs, doth adjudge order and decree that the de-fendents, when the females shall attain their ages of twenty one years, do convey the said moiety and third part to the plaintiffs, at their costs; and in the mean time that the defendents Thomas Lee Ship-pen and Champe Carter, and their ’''respective wives, and the guardian of the other defendents, do permit the plaintiffs to enter into and peaceably hold the said moiety and third part and to receive the rents and profits thereof; and that the said defendents do pay unto the plaintiffs, one half of the rents and profits of the said lands in Northcarolina, and one third part of the rents and profits of the said lands in the county of Norfolk from the time of commencing this suit: accounts of which rents and profits are directed to be made up before one of the commissioners of‘this court, who is required to examine, state and settle the same and make report thereof to the court, with such matters especially as he may think pertinent, or as the parties, may require.

 Til at common law courts are disposed to favour jointenancy, and the consequent right of survivorship appeareth by numerous examples, and by. none more signaly than the following:
Lyttleton, in the 298 sect, of his tenures, saith, if lands be given to two, to have and to hold, s. the one moiety to the one, and to his heirs, and the other moiety to the other, and to his heirs, they are tenents in common, and this hath never been denied to be law, even where the gift was by deed.
But if the lands be given by deed to two, to be equaly divided between them, and their respective heirs, the law hath been declared by many adjudications to be, that the donees are jointenents, and not tenents in common, the reason of the case in Lyttleton is said by Coke, 1, inst, p. 190. b. to be, because, they have several freeholds, and an occupation pro indiviso; and by Holt, 1 P. Will. p. 18. because the deed operates as several conveyances, and not as one, for two liveries must be made, there being several freeholders, and livery to one, secun-dum formam chartae, not enuring to the other; and that case is not like to ours, (Fisher v. Wigg) in regard there is an actual division and distribution of the land: whereas the words equaly to be divided, do not assign several parts.
Yet a man not conversant with law books, nor an admirer of law jargon, would be puzzled to discern a solid difference between the two cases, and would Incline to think, with the chancellor, 2 chan. ca. 65, the law .was so, because the judges would have it so. he would not haesitate to affirm the donors intention to have been the same in both cases, because the words, i give lands to A and B to be holden, one moiety by A and his heirs, and the other moiety by B and his heirs, and the words, i give lands to A and B, to be equally divided between them and their respective heirs, are convertible terms; for, if one moiety were holden by A and his heirs, and the other moiety ,were holden by B and his heirs, the lands would be equaly divided between A and B and their respective heirs: and, vice versa, if the lands were equaly divided between A for himself and his heirs, and B for himself and his heirs, or between A and B and their respective heirs, they would be holden, one moiety by A and his heirs, and the other moiety by B and his heirs, he would be unable to discover why, in the one case as well as in the other, the donees might not, according to Coke, have several freeholds and an occupation pro Indiviso, and why the deed might not, according to Holt, operate, as several conveyances, and not as one; and why their might not have been two liveries; nor would he be able to reconcile the words of those two judges, of Whom, commenting on Lyttletons text, one says the donees have an occupation pro indiviso, that is, an undivided occupation, or no division or distribution of the land being made, and the other says, there is an actual division and distribution of the land.— Note In edition of 1795.

 May we not hope the period not to he far distant, when the regrum ultima ratio will give place to modes of disceptation, rational, just, humane, for terminating national differences, of every kind? what nation by their example, fitter than ameri-cans, to recommend those modes. — Note in edition of 1795.

 Acts of general assembly have viven power to the court of equity to condemn the property in this commonwealth, of those who do not reside there, and are not regularly amesnable to the process of that tribunal, to satisfaction of demands against them. — Note in edition of 1795.

 By the first section of the IV article of the constitution for the united states of America full faith and credit shall he given in each state to the public acts, records and judicial procedings of every other state, and the subsequent words, ana the congress may by general laws prescribe the manner in which such acts, records and procedings, shall be proved, and the effect thereof, seem to shew that provision for such cases as these, among others, was intended to be made, until such provision shall be made, perhaps the decree, judgement or sentence of any state court may be eluded by retirement of the party into another state, yeta bond or other contract is obligatory every where, the sentence of arbitrators is supposed to be binding every where, why should not the sentence of a judge bind the party every where else as much as it would have bound him where it was pronounced » —Note in edition of 1795.